IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *    CRIMINAL NO. DLB-23-404 |
| v. | * |
| | * |
| CARLOS GUARDADO-EAGLE, | * |
| | * |
| Defendant | * |
| | * |
| | * |
| ****** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through undersigned counsel, hereby files this Sentencing Memorandum in the above captioned matter. On December 7, 2024, the Defendant pleaded guilty to Count One and Two of the Information charging him with Carjacking, in violation of 18 U.S.C. § 2119(1); and Use, Carry, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Consistent with the plea agreement in this case, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and based on the sentencing factors set forth in 18 U.S.C. § 3553(a), including the relevant Sentencing Guidelines range, the Government requests that the Court sentence Carlos Guardado-Eagle ("the Defendant"), to a term of imprisonment of **162** months followed by three years of supervised release. The sentencing hearing is currently scheduled for March 5, 2024, at 2:00 p.m.

I. **Background**

The Defendant's plea agreement contains a detailed stipulation of facts. *See* ECF 11. In sum, from mid-May 2022 to early June 2022, the Defendant and his primary co-conspirator[1] went on a carjacking spree across Maryland and Virginia targeting BMW vehicle owners. The defendant and his primary co-conspirator committed four armed carjackings and one attempted armed carjacking. During all five of these incidents, the Defendant and his primary co-conspirator each pointed firearms at their victims. During one of these carjackings, a victim's infant child was in the backseat of their BMW and the victim had to remove the child at gunpoint before the Defendant and the primary co-conspirator took the victim's vehicle. During the attempted carjacking, after the victim attempted to flee and fell to the ground, the Defendant and his primary co-conspirator struck the prone victim before retreating.

## II. The Applicable Sentencing Guidelines Range

The Defendant's conviction for Carjacking carries a statutory maximum punishment of not more than 15 years imprisonment and three years of supervised release. *See* 18 U.S.C. §§ 2119 and 3583(b)(2). The Defendant's § 924(c) conviction carries a statutory minimum of seven years—consecutive to any other term of imprisonment—a maximum of life imprisonment, and not more than five years of supervised release. *See* 18 U.S.C. §§ 924(c) and 3583(b)(1).

Through the Defendant's plea agreement, the parties agreed that the conduct described in the Statement of Facts established the Defendant's commission of additional offenses (four additional carjackings or attempted carjackings, in violation of 18 U.S.C. § 2119), as well as the offenses of conviction. The parties agreed that the offenses group as follows:

---

[1] The individual referenced herein as the Defendant's "primary co-conspirator" is the same individual throughout. This induvial was a juvenile at the time of the described conduct and their cases were resolved in the relevant state juvenile courts.

Group One: Carjacking on or about May 15, 2022

The applicable base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a). A 6-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(2)(B), because a firearm was otherwise used as part of the offense. A 2-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

Group Two: Carjacking on or about May 19, 2022

The applicable base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a). A 6-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(2)(B), because a firearm was otherwise used as part of the offense. A 2-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

Group Three (Count One): Carjacking on or about May 26, 2022

The applicable base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a). A 2-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

Group Four: Carjacking on or about June 1, 2022

The applicable base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a). A 6-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(2)(B), because a firearm was otherwise used as part of the offense. A 2-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

Group Five: Attempted Carjacking on or about June 6, 2022

The applicable base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a). A 6-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(2)(B), because a firearm was otherwise used as part of the offense. A 2-level increase applies, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

Following the subsequent application of the Chapter 3 grouping rules, the parties agree the total offense level is 32. The Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based on the Defendant's prompt recognition and affirmative acceptance of responsibility for criminal conduct. The Government also has agreed to move at sentencing for an additional 1-level decrease, pursuant to U.S.S.G. § 3E1.1(b), in recognition of the Defendant's timely notification of his intention to enter a guilty

plea. After reductions for his prompt acceptance of responsibility, the Defendant's offense level is 29.

The PSR concludes that the Defendant is in criminal history category I, and the Defendant has not objected to this calculation. *See* PSR ¶ 66. Accordingly, the PSR calculates the Defendant's guidelines range of imprisonment to be 87 to 108 months for Count Three. *See id*. ¶ 109.
With regards to Count Two, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) and U.S.S.G. § 2K2.4, there is a mandatory minimum term of imprisonment of seven years (84 months), to be imposed consecutively to the term of imprisonment for Count One. S*ee id*. ¶ 107 and 108.

However, a plea was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) where the parties agreed that a sentence within the range of not less than 120 months and not more than 162 months of imprisonment was appropriate in this case. *See* ECF 11 ¶9.

**III. The Section 3553(a) Factors and the Government's Sentencing Recommendation**

The Government respectfully submits that a sentence of 162 months in prison, followed by a three-year term of supervised release, will be sufficient but not greater than necessary to satisfy the purposes of sentencing in this case, considering the factors articulated in 18 U.S.C. § 3553(a).

*Nature and Circumstances of the Offense:* The Defendant's conduct was violent, dangerous, and sustained. The Defendant's conduct was not contained to one bad incident or night but rather was spread over an approximate three-week period. Each of the Defendant's carjackings involved at least two people, the Defendant and his primary co-conspirator, intentionally taking or attempting to take a victim's vehicle by force, violence, or intimidation. During this spree the Defendant had ample opportunity to consider his actions and stop. However, repeatedly, the

4

Defendant and his primary co-conspirator armed themselves and returned to take BMW cars from their lawful owners.

This spree started in District Heights, Maryland on May 15, 2022, when the Defendant and his primary co-conspirator used another vehicle to rear-end the Victim's 2014 BMW. *See* PSR ¶ 9. This Victim exited their vehicle began walking towards the Defendant and his primary co-conspirator when they pointed their firearms at the victim and demanded the victim's keys to the 2014 BMW. *Id.* The victim surrendered the keys and the vehicle and ran away while the Defendant and his primary co-conspirator split up, one taking the 2014 BMW and the other driving away in the car they had used to rear-end the victim. *Id.*

Four days later, on May 19, 2022, the Defendant and his primary co-conspirator approached the next victim in the driveway of the victim's home in Severn, Maryland. *See id*. ¶ 10. The Defendant and his primary co-conspirator were both armed and masked as they approached the victim and the victim's 2018 BMW. The Defendant and his primary co-conspirator pointed the firearms at the victim and ordered them out of the 2018 BMW. *Id* This victim's infant child was in the back seat of the 2018 BMW. *Id.* The victim pleaded to remove their child which the Defendant and his primary co-conspirator allowed. *Id.* The Defendant and his primary co-conspirator then entered the 2018 BMW and drove off. *Id.*

On May 26, 2022, the next victim was stopped at a red light in Silver Springs, Maryland having just exited the parking lot of a high school. *See id*. ¶ 11. The Defendant and his primary co-conspirator, again masked and armed, approached the victim on foot, each pointed firearms at the victim, and demanded the victim exit their 2016 BMW. *Id.* They demanded the keys to 2016 BMW, which the victim provided before running away as directed. The Defendant and his primary

co-conspirator split up, one taking the 2016 BMW and the other driving away in the car they had arrived in. *Id.*

On June 1, 2022, in a parking garage in Tysons, Virginia, the Defendant and his primary co-conspirator, again committed another armed carjacking. Here, the Defendant, again masked, approached the victim who was inside a 2015 BMW, and demanded the victim's keys at gunpoint. *See id*. ¶ 12. The Defendant, still pointing his firearm at the victim, demanded the victim exit the 2015 BMW. *Id.* The victim complied and surrendered the 2015 BMW and keys. *Id*. The Defendant and his primary co-conspirator split up, one taking the 2016 BMW and the other driving away in the car they had arrived in. *Id.*

Finally, the spree concluded on June 6, 2022, when the Defendant and his primary co-conspirator attempted to carjack the owner of a 2021 BMW in a parking garage in Baltimore, Maryland. *See id*. ¶ 13. The Defendant and his primary co-conspirator approached the victim, who was walking from their 2021 BMW. *Id.* The Defendant and his primary co-conspirator both were masked and displaying firearms. The victim attempted to run away but fell to the floor of the garage. *Id.* The Defendant and his primary co-conspirator demanded the victim's keys while striking the victim. The victim refused to surrender their keys and eventually the Defendant and his primary co-conspirator gave up and departed in another vehicle. *Id.*

***History and Characteristics of the Defendant:*** The Defendant's past suggests that this is his most serious offense and, indeed, he has not been incarcerated before. And while there is no history of criminal conduct or violence by the Defendant prior to this conduct, his decision to commit several gunpoint carjackings is substantial criminal activity in itself and should be punished accordingly. The Defendant's willingness to use violence to take the victim's BMWs, seemingly for no economic gain, is also cause for alarm.

*The Need to Reflect the Seriousness of the Offense:* The Defendant's conduct is serious, and carjacking is a serious crime. Due to the violent nature of the crime, carjackings can cause severe physical and metal injuries to the victims, not to mention the loss of their vehicles. Bodily harm can only be the initial problem because many victims also experience trauma, both emotional and psychological, which can cause ongoing suffering for the victims. Here, the Defendant's carjackings were especially serious because he and his primary co-conspirator pointed firearm at the victims during each of the carjackings, got in a physical altercation with the victim of their attempted carjacking, and during the most dangerous carjacking, a victim had to plead for permission to remove his infant child from the backseat of the BMW before it was taken. The Defendant and his primary co-conspirator thankfully acquiesced to this request but this incident highlights how precariously close armed carjackings can be to the loss of innocent life.

Using, carrying, or brandishing a firearm during a crime of violence is also a serious offense. It is so serious that Congress mandated a mandatory minimum sentence of seven years, consecutive to any other sentence, for offenders convicted under 18 U.S.C. § 924(c). Accordingly, had the Defendant been charged and convicted on all five potential 18 U.S.C. § 924(c) charges supported by the conduct described in the plea agreement, he could have thirty-five years consecutive to any sentences for the related carjacking offenses.

*The Need to Provide Adequate Deterrence to Criminal Conduct:* The need for specific deterrence is clear, the Defendant cannot be permitted to continue down this violent and dangerous path and a sentence of 162 months would prevent the defendant from posing this type of danger to the public. Hopefully, a sentence of this severity would also reach other youthful potential carjackers and have a deterrent effect before they find themselves in a similar position.

**The Need to Protect the Public:** Similarly, a 162 month sentence would protect the public from the Defendant. For three weeks in 2022, the Defendant showed repeatedly that he was incapable of abiding by the law and, in doing so, he put the lives of his five victims in danger so he could take their property. The Defendant has not attempted to minimize his conduct and, from the beginning of the federal case, has accepted responsibility for his actions. However, at present, the public needs to be protected from him.

## IV. Restitution

The Government has contacted each of the victims in this case by mail, email and telephonically. Two victims initially indicated in an interest in restitution, however, have not responded to follow up communications regarding their specific claims. The Government is not seeking a restitution order at present but is mindful of its ongoing obligation and will inform the Court and the Defendant if a restitution claim becomes appropriate.

## V. The Recommended Sentence

As noted above, the Government respectfully recommends a sentence of imprisonment of 162 months, a sentence at the highest end the applicable range pursuant to the Fed. R. Crim. P. 11(c)(1)(C) plea, in order to reflect and respond to the Defendant's serious offense but taking into account his subsequent prompt acceptance of responsibility and lack of other criminal history.

Further, the Government respectfully requests the imposition of a term of supervised release of three years, to be in effect upon the Defendant's release from imprisonment.

## VI. Conclusion

For the foregoing reasons, the government requests that the Court sentence the Defendant to a term of 162 months' imprisonment to be followed by a 3-year period of supervised release.

Respectfully submitted,

Erek L. Barron
United States Attorney

/s/
Nicholas Potter
Special Assistant United States Attorneys